(No. 21885.—

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts *et al.* Plaintiffs in Error, *vs.* E. C. DENNHARDT, Defendant in Error.

*Opinion filed December 22, 1933.*

OTTO KERNER, Attorney General, and JAMES M. JOHNSTON, (GEORGE W. HUNT, of counsel,) for plaintiffs in error.

S. E. LONG, and SWEENEY & EAGLE, (EDWARD L. EAGLE, of counsel,) for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Auditor of Public Accounts, on September 25, 1931, took possession of the assets and business of the Manufacturers State Bank of East Moline, in Rock Island county, and on October 30, 1931, appointed Oscar Ohlweiler receiver of the bank. The People of the State, on the relation of the Auditor, on December 14, 1931, filed a bill in the circuit court of Rock Island county for the dissolution of the bank and the liquidation of its assets. E. C. Dennhardt, treasurer of township 18 north, range 1 east of the fourth principal meridian, by his verified petition filed in the proceeding, claimed $4655.69 and asked that the bank's assets be impressed with a trust in his favor for that amount. A decree was entered in accordance with the prayer of the petition. To reverse that decree, the Auditor and the receiver prosecute this writ of error.

For a considerable period prior to September 24, 1931, E. C. Dennhardt, as township treasurer, had money on deposit in the Manufacturers State Bank of East Moline. On that day he drew a check upon his account for $4653.38 and presented it at the bank for payment. Instead of paying the check in money, as Dennhardt had requested, an officer of the bank issued a draft drawn on the Continental Illinois Bank and Trust Company of Chicago. The draft was for the amount of the check and was made payable to Dennhardt in his official capacity. The Manufacturers State Bank stamped the check paid and charged it to the drawer's account. Dennhardt, on the same day,

deposited the draft in the State Bank of East Moline for collection and that bank immediately mailed the draft to the Continental Illinois Bank and Trust Company. On the next day, the Manufacturers State Bank failed to open, and the drawee in the draft, for that reason, refused to pay the draft and returned it to the State Bank of East Moline. The draft was protested in Chicago, and the protest fees, $2.31, were added to the face of the draft, making $4655.69, the amount for which Dennhardt claimed a preference in payment over the general creditors of the closed bank.

The defendant in error bases his claim to a preference upon paragraph 2 of section 13 of "An act defining the relations between banks and their depositors with respect to the deposit and collection of checks and other instruments payable in money," approved July 8, 1931. (Laws of 1931, p. 675; Cahill's Stat. 1931, p. 177; Smith's Stat. 1931, p. 1982). The pertinent part of that paragraph reads: "When a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund repre-

senting such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

The first contention which the plaintiffs in error make to obtain a reversal of the decree is that the act in question is void because it purports to amend the general Banking act without having been submitted to a vote of, and approval by, the people as required by section 5 of article 11 of the constitution. The relevant part of that section provides: "No act of the General Assembly authorizing or creating corporations or associations with banking powers, whether of issue, deposit or discount, nor amendments thereto, shall go into effect or in any manner be in force unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law." The same question was considered in *McQueen* v. *Randall,* 353 Ill. 231, and it was there decided that the act assailed was not an amendment of the Banking act. It follows that submission of the former to a vote of the people and its approval by a majority of the votes cast at an election were not conditions precedent to the taking effect of the act.

The plaintiffs in error further contend that the act amends section 15½ of the general Banking act without complying with the requirement of section 13 of article 4 of the constitution that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." Since the act of July 8, 1931, is not an amendment of the general Banking act, the contention that the former amends a particular section of the latter cannot be sustained.

The second paragraph of section 13 of the act is challenged on the ground that it selects certain creditors of a closed bank and impresses the funds of the bank with a

trust in their favor to the exclusion of other creditors of the same class in violation of section 22 of article 4 of the constitution. The section invoked prohibits the passage of local or special laws in twenty-three enumerated cases, none of which concerns banks, and concludes with the sentence that "In all other cases where a general law can be made applicable, no special law shall be enacted." An act which is general in its nature and uniform in its operation upon all persons coming within its scope is a general law. (*Cummings* v. *City of Chicago,* 144 Ill. 563; *Park* v. *Modern Woodmen of America,* 181 id. 214; *People* v. *People's Gas Light Co.* 205 id. 482). A law is general, not because it embraces all the governed, but because it may embrace all when they are similarly situated and come within its provisions. (*Hawthorn* v. *People,* 109 Ill. 302; *People* v. *Kaelber,* 253 id. 552). A law broad enough to reach every portion of the State and to embrace within its provisions every person or thing distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, is not a special or local, but a general law, even though there may be but one member of the class, or one place on which it operates. (*West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 170; *People* v. *Graham,* 301 id. 446). The act of July 8, 1931, operates uniformly upon all banks and persons that come within the scope of its provisions, and it is therefore a general and not a special law.

The plaintiffs in error argue, however, that paragraph 2 of section 13 of the act has no rational basis for the classification by which certain creditors of the bank are given a preference over other creditors and, consequently, that the uniformity in the operation of a law required by section 22 of article 4 of the constitution is defeated. The paragraph provides, when an instrument for the payment of money is presented to the bank upon which it is drawn and the drawer has on deposit sufficient money to pay it

and the bank fails after having charged the instrument to the drawer's account without having paid it or substituted the liability of another bank for it, that the assets of the drawee shall be impressed with a trust in favor of the holder of the instrument and he shall be entitled to a preferred claim thereon without regard to the question whether the fund representing the instrument can be traced and identified as part of such assets or has been intermingled with or converted into other assets of the failed bank. The presentation and surrender of such an instrument to the bank upon which it is drawn, the deduction by that bank of the face or amount of the instrument from the drawer's account without actual payment or satisfaction in some other form may afford a reasonable basis for the creation by the legislative power of a trust relationship and the consequent right to a preference in payment over the insolvent drawee's general creditors. It cannot be said that the second paragraph selects certain creditors, and without a difference in situation, arbitrarily grants them a preference over other creditors of the same class.

The plaintiffs in error argue that the legislature intended the act approved July 8, 1931, to apply only where a bank acts as agent for the purpose of making collection and that the drawer of a check or other instrument for the payment of money, who presents it to the bank upon which it is drawn and requests payment, does not present it as an item for collection. The provisions of paragraph 2 of section 13 of the act extend beyond the subject of a bank's agency to make collection of the items entrusted to it. The paragraph provides that, under the conditions stated, the assets of the drawee shall be impressed with a trust and no limitation is imposed respecting the person who presents the check or other instrument for the payment of money. By charging the drawer's account with the amount of the check or instrument presented, that amount is in effect taken from his account and held in trust by

the bank for the legal holder of the check or other instrument. The defendant in error did not request the draft on the Continental Illinois Bank and Trust Company and his right to a preference became fixed regardless of the issuance of the draft. Under the facts shown by the evidence the statute specifically impressed the assets of the closed bank with a trust in favor of the defendant in error and he is entitled to a preference in payment over the bank's general creditors for the amount claimed.

The decree of the circuit court is affirmed.

*Decree affirmed.*